UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :
            -against-                                       :   23-CR-514 (VSB)
                                                            :
PETER WEISER and THOMAS BRANSKY,                            :   **OPINION & ORDER**
                                                            :
                             Defendants.                    :
------------------------------------------------------------X

<u>VERNON S. BRODERICK, United States District Judge</u>:

  Defendants Peter Weiser ("Weiser") and Thomas Bransky ("Bransky" and collectively, "Defendants") are charged with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and one count of embezzlement of government funds, in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2. In addition, the indictment charges Weiser with one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

  Before me is Defendants' motion to dismiss the indictment in its entirety under Federal Rule of Criminal Procedure 12(b) on the basis that fraudulent inducement is not a viable theory of culpability for federal wire fraud. After the parties completed briefing on the motion to dismiss, the Supreme Court issued its decision in *Kousisis v. United States*, 145 S. Ct. 1382 (2025), which held that a fraudulent inducement, even without economic loss to the victim, can sustain a wire fraud conviction. Because *Kousisis* forecloses Defendants' argument, Defendants' motion is DENIED.

1

II.     **Factual Background**[1]

Between 2014 and 2020, the City of New York (the "City") and "Childrens [sic] Community Services, Inc." ("CCS"), a purported not-for-profit homeless services provider, entered into a series of contracts for "the provision of temporary housing and homeless services in New York City." (Doc. 1 ("Ind.") ¶ 1.) During this period, Bransky was the Chief Executive Officer of CCS. (*Id.*)

Although Weiser had no formal role at CCS between 2014 and 2020, Weiser played a critical role in forming and funding CCS, and remained "involved in most business decisions, including hiring, contracting, and the day-to-day operations of CCS." (*Id.* ¶¶ 1, 8, 11.) Indeed, Weiser shared an office with CCS until 2016, and even after 2016, had an office in the same building as CCS. (*Id.* ¶ 7.)

The New York Department of Homeless Services ("DHS") onboarded CCS as a homeless services provider in 2014. (*Id.* ¶¶ 21, 24.) Between 2014 and 2020, "CCS was awarded twelve contracts with DHS . . . for approximately $913 million." (*Id.* ¶ 25.) As part of CCS's performance of the DHS contracts, it awarded sub-contracts to various vendors, to provide services such as information technology, cleaning, security, apartment and property preparation, and food services. (*Id.* ¶¶ 28, 34.) Weiser and Bransky together steered these lucrative service contracts, which were ultimately paid for by the City, to a group of affiliated entities owned and controlled by Weiser (the "Weiser Entities"), "without using a competitive bidding process, conducting proper due diligence, completing necessary documentation, or

---

[1] The facts in this section are based upon the factual allegations set forth in the indictment. (Doc. 1.) I assume the allegations in the indictment to be true in considering the motion to dismiss. *See United States v. Avenatti*, 432 F. Supp. 3d 354, 360–61 (S.D.N.Y. 2020) ("In reviewing a motion to dismiss an indictment, the Court must take the allegations of the indictment as true." (first citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16 (1952); and then citing *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004))). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such finding.

obtaining requisite approvals." (*Id.* ¶ 1, 4.) Weiser and Bransky "intentionally concealed Weiser's involvement in the formation and operation of CCS and his ownership and control of certain of the Weiser Entities from the City, including by submitting false statements and documents to the City." (*Id.* ¶ 1.) Many of the Weiser Entities were created solely to provide services to CCS, and obtained those services from third-party vendors that they re-sold to CCS at marked-up prices. (*Id.* ¶ 2.) In sum, the Defendants caused CCS to pay the Weiser Entities more than $50 million for goods and services, a cost which was ultimately borne by the City. (*Id.* ¶ 5.) "The City would not have authorized or made these payments had proper and truthful disclosures about the Weiser Entities been made." (*Id.*)

### III. Procedural History

Defendants were indicted on October 5, 2023. (*See* Ind.) On December 13, 2024, Defendants moved to dismiss the indictment. (Doc. 50 ("Mot.").) On February 25, 2025, I ordered the parties to meet and confer regarding a briefing schedule. (Doc. 58.) On February 28, 2025, the parties submitted a joint letter proposing a briefing schedule, in which the Defendants argued that briefing should be adjourned until *United States v. Kousisis* was decided by the Supreme Court. (Doc. 59.) I held a conference with the parties on March 3, 2025, where Defendants sought to adjourn the motion to dismiss briefing and the trial date, based in part on the pendency of *Kousisis*. (*See* Doc. 61.) At that conference, I adjourned the trial from April 28, 2025 to November 17, 2025, and ordered the parties to move forward with briefing the motion to dismiss. (*Id.*)

On April 18, 2025, the Government filed its opposition. (Doc. 69 ("Opp'n").) On May 19, 2025, Defendants filed a reply brief. (Doc. 74.) On May 22, 2025, the Supreme Court decided *Kousisis.* On June 1, 2025, the Government filed a brief letter notifying me that

*Kousisis* had been decided and noting that Defendants' motion to dismiss "relied heavily on the same arguments that were raised – and now rejected – in *Kousisis*." (Doc. 76 at 1 n.1.) Defendants did not file any response to the Government's letter or seek to submit supplemental briefing.

### IV. <u>Legal Standard</u>

A defendant may move to dismiss an indictment for failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). Rule 7 of the Federal Rules of Civil Procedure requires an indictment to be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." *See also United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) ("A criminal defendant is entitled to an indictment that states the essential elements of the charge against him."). This is not a high bar, as "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)). Accordingly, "[t]he dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. Avenatti*, 432 F. Supp. 3d 354, 360 (S.D.N.Y. 2020) (quoting *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)). However, "[s]ince federal crimes are 'solely creatures of statute,' a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) (first quoting *Dowling v. United States*, 473 U.S. 207, 213 (1985); and then citing *Pirro*, 212 F.3d at 91–92).

"[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998). Thus, "[i]n

4

reviewing a motion to dismiss an indictment, the Court must take the allegations of the indictment as true." *Avenatti*, 432 F. Supp 3d at 360–61 (first citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952); and then citing *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004)).

## V. Discussion

Defendants move to dismiss on the grounds that under the federal wire fraud statute, "deceptively inducing someone to enter a transaction is criminal only when it is accompanied by an intent to harm a pecuniary or traditional property interest—*i.e.*, when a person dupes another into paying something for a product or service that it does not receive." (Mot. 4.) Accordingly, Defendants assert that the indictment in this case is defective because Defendants did not intend to cause pecuniary harm and there is no allegation that the City never received the services for which it contracted with CCS. (*Id.*) In support of this argument, Defendants point to a line of cases culminating in *Ciminelli v. United States*, in which the Supreme Court found that federal fraud statutes criminalize only schemes to deprive people of traditional property interests, not schemes to deprive people of "potentially valuable economic information necessary to make discretionary economic decisions." 598 U.S. 306, 309 (2023) (internal quotation marks omitted). In other words, Defendants assert that their deception regarding the true ownership of the Weiser Entities and Weiser's role in CCS only deprived the City of information valuable to their contracting decisions, not any cognizable property interest.

Defendants' argument is squarely foreclosed by the Supreme Court's recent decision in *United States v. Kousisis*, 145 S. Ct. 1382 (2025). In *Kousisis*, Alpha Painting and Construction Co. and the company's project manager, Stamatios Kousisis, secured government contracts for two Philadelphia-based painting projects. *Id.* at 1388. For each project, the U.S. Department of

5

Transportation provided funds requiring recipients to work, in part, with disadvantaged business enterprises (DBEs), defined as for-profit small businesses that are "majority owned and controlled by one or more individuals who are both socially and economically disadvantaged." *Id.* at 1389 (internal quotation marks omitted). Alpha and Kousisis committed to working with Markias, Inc. ("Markias"), a certified DBE, to obtain paint supplies for the projects. *Id.* However, instead of working with Markias to obtain paint supplies as promised, Alpha and Kousisis worked with other suppliers to obtain paint supplies and arranged for those suppliers to send invoices to Markias, which then issued a new invoice that was sent to Alpha with a small fee added. *Id.* Kousisis then paid Markias for the pass-through fee and separately made a much larger payment to the actual suppliers. *Id.* Defendants submitted the Markias invoices as part of the contract documentation, making their performance of the contract appear to be compliant with the DBE requirement. *Id.*

Once this scheme was discovered, the Government charged Alpha and Kousisis with wire fraud and conspiracy to commit wire fraud, "asserting that they had fraudulently induced [the Pennsylvania Department of Transportation] to award them the painting contracts." *Id.* at 1388–89. A jury convicted the Kousisis and Alpha of both charges. *Id.* at 1389. Alpha and Kousisis's convictions went to the Supreme Court on the question of whether the federal fraud convictions could stand when the defendants did not intend to inflict economic loss on the victim.

The Supreme Court held that the wire fraud statute does not have an economic loss requirement, *id.* at 1392, and the fraudulent-inducement theory of fraud is consistent with the text of the statute, *id.* at 1391–92, the common-law understanding of fraud, *id.* at 1392–96, and the Court's precedent, *id.* at 1396–98. The text of the federal wire fraud statute provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. Despite the framing of "any scheme or artifice to defraud, or for obtaining money or property" in the disjunctive, the statute has been interpreted to provide a single "pathway[] to conviction" wherein "'the money-or-property requirement of the latter phrase' operates as a limitation on the former." *Kousisis*, 145 S. Ct. at 1391 (quoting *McNally v. United States*, 483 U.S. 350, 358–360 (1987)). Accordingly, "[t]o be guilty of wire fraud, a defendant must (1) 'devis[e]' or 'inten[d] to devise' a scheme (2) to 'obtai[n] money or property' (3) 'by means of false or fraudulent pretenses, representations, or promises.'" *Id.* at 1391 (quoting 18 U.S.C. § 1343). "The prototypical fraudulent-inducement scheme plainly satisfies each of these statutory elements." *Id.*; *see also United States v. Runner*, 143 F.4th 146, 157 (2d Cir. 2025) (finding that allegations that Defendant used false and misleading advertising "to induce customers to pay money" are "plainly sufficient" to support a wire fraud charge under *Kousisis*). Indeed, "[t]he [wire fraud] statute does not so much as mention loss, let alone require it." *Id.* at 1392.

The allegations in this case clearly state a claim under the wire fraud statute. First, Defendants devised a scheme wherein Weiser's role in the Weiser Entities and his control of CCS would be concealed from the City to enable the Weiser Entities to receive sub-contracts from CCS without being flagged for violating the City's conflict-of-interest prohibitions and competitive-bidding rules. Second, the aim of the scheme was to obtain money in the form of lucrative sub-contracts. Third, Defendants used false pretenses and representations to initiate and carry out their scheme, including by scrubbing Weiser's name and office address from the

7

public face of CCS and the Weiser Entities and falsifying documents that were submitted to the City.  Moreover, the fact pattern of this case closely tracks the fact pattern of *Kousisis*, as Defendants have acknowledged.  (*See* Mot. 2 n.1 ("Given the strong similarity between the issues raised in *Kousisis* and those raised in this motion to dismiss, the Court should consider waiting to resolve this motion to dismiss . . . until after *Kousisis* is decided.").)  Both cases bring wire fraud charges against a government contractor who flouted contracting requirements and concealed its noncompliance with the aim of obtaining money in the form of lucrative government contracts.  *Kousisis* makes clear that such a fact pattern states a claim for wire fraud.[2]

## VI.    Conclusion

For the foregoing reasons, Defendants' motion is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. 50.

SO ORDERED.

Dated: September 16, 2025
       New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge

---

[2] To prove wire fraud under a fraudulent inducement theory, the Government will also have to show that Defendants' misrepresentations were material.  "[A] misrepresentation is material if a reasonable person would attach importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient would likely deem it important."  *Kousisis*, 145 S. Ct. at 1396 (citing *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 193 (2016)).  Materiality is not at issue in the motion to dismiss, and therefore I do not address it.